# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

ANTHONY JOSEPH C.,[1]

                                       Plaintiff,

        v.                                      5:18-CV-793
                                                      (ATB)

COMMISSIONER OF SOCIAL SECURITY,

                                         Defendant.

---

HOWARD D. OLINSKY, ESQ., Attorney for Plaintiff
REBECCA H. ESTELLE, Special Asst. U.S. Attorney for Defendant

ANDREW T. BAXTER, U.S. Magistrate Judge

## MEMORANDUM-DECISION and ORDER

This matter was referred to me, for all proceedings and entry of a final judgment, pursuant to the Social Security Pilot Program, N.D.N.Y. General Order No. 18, and in accordance with the provisions of 28 U.S.C. § 636(c), Fed. R. Civ. P. 73, N.D.N.Y. Local Rule 73.1, and the consent of the parties. (Dkt. No. 4).

## I.    PROCEDURAL HISTORY

Plaintiff filed an application for Disability Income Benefits ("DIB") and Supplemental Security Income ("SSI") on October 10, 2014, alleging disability beginning March 3, 2014 (Administrative Transcript ("T.") 29). The application was denied initially on February 19, 2015. (T. 12). Plaintiff requested a hearing, which was

---

[1] In accordance with recent guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Northern District of New York in June 2018 in order to better protect personal and medical information of non-governmental parties, this Memorandum-Decision and Order will identify the plaintiff using only a first name and last initial.

held before Administrative Law Judge ("ALJ") Kenneth Theurer on March 8, 2017, at which plaintiff and Vocational Expert ("VE") David A. Festa testified. (T. 47-79, 127-28; 163-67). On April 6, 2017, ALJ Kenneth Theurer found plaintiff was not disabled from March 3, 2014 through the date of his decision. (T. 26-42). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied plaintiff's request for review on May 1, 2018. (T. 1-3).

## II.    GENERALLY APPLICABLE LAW

### A.    Disability Standard

To be considered disabled, a plaintiff seeking disability insurance benefits or SSI disability benefits must establish that he is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. . ." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. sections 404.1520 and 416.920, to evaluate disability insurance and SSI disability claims.

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which meets or equals the criteria of an impairment listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience.... Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant can perform.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920. The plaintiff has the burden of establishing disability at the first four steps. However, if the plaintiff establishes that his impairment prevents him from performing his past work, the burden then shifts to the Commissioner to prove the final step. *Id*.

## B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supported the decision. *Selian v. Astrue*, 708 F.3d 409, 417 (2d Cir. 2013); *Brault v. Soc. Sec. Admin, Comm'r*, 683 F.3d 443, 448 (2d Cir. 2012); 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). It must be "more than a scintilla" of evidence scattered throughout the administrative record. *Id*. However, this standard is a very deferential standard of review "-even more

so than the 'clearly erroneous standard.'" *Brault*, 683 F.3d at 448.

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams on behalf of Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). However, a reviewing court may not substitute its interpretation of the administrative record for that of the Commissioner, if the record contains substantial support for the ALJ's decision. *Id. See also Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

An ALJ is not required to explicitly analyze every piece of conflicting evidence in the record. *See, e.g., Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981) ("we are unwilling to require an ALJ explicitly to reconcile every conflicting shred of medical testimony . . ."). However, the ALJ cannot " 'pick and choose' evidence in the record that supports his conclusions." *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 (S.D.N.Y. 2004); *Fuller v. Astrue*, No. 09-CV-6279, 2010 WL 5072112, at *6 (W.D.N.Y. Dec. 6, 2010).

## III.   FACTS

As of the date of the March 8, 2017 hearing, plaintiff was 58 years old. (T. 80). He lived at home with his wife and their two children, ages nine and seventeen respectively. (T. 54).  Plaintiff completed high school in special education classes. (T.

4

54, 259). Plaintiff claims disability resulting from his arthritis, dyslexia, attention deficit hyperactivity disorder ("ADHD"), and knee impairments. (Pl. Br. at 1) (Dkt. No. 11).

Plaintiff's employment history includes working as a materials handler, packing room runner, forklift operator, and working in quality assurance. (T. 55-56; 60; 260). Plaintiff's most recent job was working as a forklift operator. (T. 55-63). Plaintiff testified he stopped working in February 2014 due to left knee pain, requiring arthroscopic surgery. (T. 60-62, 259, 293). When the ALJ asked plaintiff about the conditions that prevented him from returning to work full time, plaintiff testified that he was "falling apart." (T. 62).

Although plaintiff admitted that his left knee was "fine," he claimed he could not return to work because his other knee was a "little bit" off, and he was falling asleep at work. (T. 61). Plaintiff claimed that his sleep apnea and general fatigue caused him to get tired and take naps throughout the day, affecting his ability to focus. (T. 69-70).

Plaintiff further testified that he was recovering from his recent right knee surgery. (T. 64-67). Plaintiff claimed that he could stand for approximately one hour before he had pain. (T. 67). Plaintiff also claimed that he had a bulging disc that began bothering him six months prior to the March 8, 2017 hearing. (T. 68). Plaintiff stated that he had neck issues, causing his left finger to go "numb a little bit," and that he "sometimes" had pain in his left forearm at night. (T. 61, 68).

Plaintiff testified that he was let go from his previous position in quality assurance due to his dyslexia. (T. 55-57). Plaintiff stated that reading and writing was very difficult for him, and he got headaches when he read. (T. 70).

Plaintiff reported that he dressed, bathed and groomed himself. (T. 65). Plaintiff also cleaned and did laundry. (T. 65). Plaintiff could use a microwave and prepared simple meals without recipes, because he could not read recipes. (T. 464-67). He could drive. (T. 65, 465). He stated that he got along with his friends and family. (T. 465). He often spent his time doing chores, listening to audiobooks, watching television and movies, socializing, going to church, and listening to the radio. (T. 65-66, 70, 464-65, 467-68). Plaintiff admitted to exercising often, including running and biking. (T. 378, 392, 395). In fact, plaintiff testified that he continued to jog on the treadmill and used an elliptical trainer until December 2016. (T. 64-65). Plaintiff complained of shoulder pain following an attempt to do a bicep curl using a 180-pound weight. (T. 63, 490). [2]

The ALJ heard testimony from VE Festa. (T. 74-78). The ALJ asked VE Festa to consider a hypothetical individual of the plaintiff's age, education, and Past Relevant Work ("PRW"). (T. 74). The ALJ then added the following restrictions: "the individual could lift 50 pounds occasionally, lift and carry up to 25 pounds frequently, medium work as defined by the regulations. Stand or walk for approximately six hour[s], and sit

---

[2] When the ALJ inquired into his 180-pound "curl" the plaintiff claimed he normally lifted "like 20 to 30 pounds." (T. 63). After plaintiff was asked how much weight he was lifting again, he replied, "none, I wasn't." (T. 63). Then, the plaintiff changed his answer again testifying, "I would fool around with 10 or 20 pounds." (T. 64).

for up to six hours in an eight hour day with normal breaks." (*Id*.) The individual could "occasionally climb ramps or stairs, occasionally climb ladders, ropes or scaffolds." (T. 75). The individual could "occasionally balance, stoop, kneel, crouch and crawl." In addition, the individual "should not perform more than occasional fine manipulation such as repetitive hand, finger actions, fingering or feeling with [his] left non-dominant hand." (*Id*.) Further, the individual "would retain the ability to grasp, hold, turn raise and lower objects with either hand." (*Id*.) The individual "would retain the ability to understand and follow a simple instructions and directions" and "perform a simple task with supervision and independently." (*Id*.) This individual could "maintain attention and concentration for simple tasks…regularly attend to a routine and maintain a schedule," and "would retain the ability to read at a third grade level." (*Id*.)

The VE stated that the above restrictions would rule out plaintiff's PRW, but that there were other jobs that this individual could perform. (T. 75-76). The VE testified that the available unskilled, medium level jobs were: cook helper, hand packer, and industrial cleaner. (T. 76-77). According to the VE, in order to perform these jobs, the individual could not be off-task more than ten percent of the workday, and he could not have more than one unexcused absence per month. (T. 78).

Plaintiff's counsel has summarized the relevant medical records in his brief. The Commissioner's counsel has adopted the recitation of the facts as stated by the ALJ in his opinion and the procedural history as set forth by plaintiff's counsel, except for any

conclusions or inferences stated therein. (Pl.'s Br. at 3-6); (Def.'s Br. at 2) (Dkt. No. 11). Rather than reciting the medical evidence at the outset, the court will discuss the relevant details below, as necessary to address the issues raised by plaintiff, with any modifications as noted in the decision.

## IV.   THE ALJ'S DECISION

The ALJ first found that plaintiff met his insured status through December 31, 2018. (T. 31). Plaintiff had not engaged in substantial gainful activity since his alleged onset date of March 3, 2014. (*Id*.) At step two of the sequential evaluation, the ALJ found that plaintiff's left-hand carpal tunnel syndrome, dyslexia, and ADHD were severe impairments. (*Id*.) The ALJ also found that plaintiff's sleep apnea, status-post thyroid lobectomy, status-post bilateral knee arthroscopies, and injury to the left arm were not severe. (T.31-32).

At step three of the evaluation, the ALJ found that plaintiff's severe impairments did not meet or medically equal the severity of any Listed Impairment. (T. 32). In making this determination, the ALJ considered Listing 1.02 (Major Disfunctions of a Joint), and Listing 12.05 (Intellectual Disorders). (T. 32). The ALJ found that plaintiff did not have sufficient difficulty in performing fine and gross movements to meet the requirements Listing of 1.00 B(2)(c).[3] Further, plaintiff retained the ability to care for his own personal needs and had no limitations in interacting with others, for the

---

[3] Listing 1.02(B) refers to an inability to perform fine and gross movements effectively "as defined in 1.00B2c." 20 C. F. R. Pt. 404, Subpt. P. App. 1 § 1.02(B).

purpose of Listing 12.05.

At step four, the ALJ found that plaintiff could perform "less than the full range of exertional requirements of medium work." (T. 33). Plaintiff could "lift up to fifty pounds occasionally" and "lift or carry up to twenty-five pounds frequently." (T. 33). He could "sit for up to six hours in an eight-hour workday," and stand and walk for six hours in an eight-hour workday. (*Id*.) He "could occasionally climb ramps or stairs; occasionally climb ladders, ropes and scaffolds; occasionally balance, stoop, kneel, crouch and crawl." (*Id*.) He should "not perform more than occasional fine manipulation such as repetitive hand-finger actions, fingering, or feeling with his left hand." (*Id*.) However, the ALJ found that he "retains the ability to grasp, hold, turn, raise and lower objects with his hand." (*Id*.) Further "he retains the ability to understand and follow simple instructions and directions, perform simple tasks with supervision and independently, maintain attention and concentration for simple tasks, and regularly attend to a routine and maintain a schedule." (*Id*.) He "retains the ability to read at the third-grade level." (*Id*.) In making this RFC determination, the ALJ stated that he considered all of the plaintiff's "symptoms, and the extent to which those symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and 416.929." (*Id*.) Finally, the ALJ stated he "considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 416.927." (*Id*.)

The ALJ also found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms;" however, the plaintiff's "statements as to the intensity, persistence and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record." (*Id.*) The ALJ then determined that plaintiff was unable to perform any of his past relevant work. (T. 35). However, he also found that "considering the [plaintiff]'s age, education, work experience and residual functional capacity," there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform. (T. 36). Accordingly, the ALJ determined that plaintiff was not disabled from March 3, 2014 through the date of the ALJ's decision. (T. 37).

## V.    ISSUES IN CONTENTION

Plaintiff raises the following arguments:

1.    "The ALJ incorrectly found plaintiff's knee problems non-severe at step two and failed to incorporate any limitations from the impairment in his RFC determination." (Pl.'s Br. at 1, 8-11).

2.    Dr. Kalyani Ganesh's opinion is vague and it cannot support the RFC. (Pl.'s Br. at 1, 11-14).

Defendant argues that the Commissioner's decision is supported by substantial evidence in the record, is based upon the application of correct legal standards, and should be affirmed. (Def.'s Br. at 2). For the following reasons, this court concludes that the ALJ did not err in evaluating the medical opinion evidence, and the ALJ's RFC determination was supported by substantial evidence. Accordingly, this court will

affirm the administrative decision.

## VI.    SEVERITY/DURATION

### A.    Legal Standards

The claimant bears the burden of presenting evidence establishing severity of impairments at step two of the disability analysis. *Briggs v. Astrue*, No. 5:09-CV-1422 (FJS/VEB), 2011 WL 2669476, at *3 (N.D.N.Y. Mar. 4, 2011), (*Rep't Rec.*), *adopted* 2011 WL 2669463 (N.D.N.Y. July 7, 2011). A severe impairment is one that significantly limits the plaintiff's physical and/or mental ability to do basic work activities. *See* 20 C.F.R. § 404.1520(c); *see also* 20 C.F.R. § 404.1521(a) (noting that an impairment is not severe at step two if it does not significantly limit a claimant's ability to do basic work activities).

The Regulations define "basic work activities" as the "abilities and aptitudes necessary to do most jobs," examples of which include, (1) physical functions such as walking, standing, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. 20 C.F.R. § 404. 1521(b). "Severity" is determined by the limitations imposed by an impairment, and not merely by its diagnosis. The mere presence or diagnosis of a disease or impairment is not, by itself, sufficient to deem a

condition severe. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10 (W.D.N.Y. Sept. 30, 2013) (quoting *McConnell v. Astrue*, No. 6:03-CV-521 (TJM), 2008 WL 833968, at *2 (N.D.N.Y. Mar. 27, 2008)).

An ALJ should make a finding of "'not severe' . . . if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" *Rosario v. Apfel*, No. 97 CV 5759, 1999 WL 294727, at *5 (E.D.N.Y. Mar. 19, 1999) (quoting Social Security Ruling ("SSR") 85-28, 1985 WL 56856, at *3 (1985)). Although an impairment may not be severe by itself, the ALJ must also consider "the possibility of several such impairments combining to produce a severe impairment . . ." SSR 85-28, 1985 WL 56856, at *3. However, a combination of "slight abnormalities," having no more than a minimal effect on plaintiff's ability to work will not be considered severe. *Id*. The ALJ must assess the impact of the combination of impairments, rather than assessing the contribution of each impairment to the restriction of activity separately, as if each impairment existed alone. *Id*.

The Second Circuit has held that the step two analysis "may do no more than screen out *de minimis* claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir.1995). If the disability claim rises above a *de minimis* level, then the ALJ must undertake the remaining analysis of the claim at step three through step five. *Id*. at 1030.

Often, when there are multiple impairments, and the ALJ finds some, but not all

of them severe, an error in the severity analysis at step two may be harmless because the ALJ continued with sequential analysis and did not deny the claim based on the lack of a severe impairment alone. *Tryon v. Astrue*, No. 5:10-CV-537 (MAD), 2012 WL 398952, at *3 (N.D.N.Y. Feb. 7, 2012) (citing *Kemp v. Commissioner of Soc. Sec.*, No. 7:10-CV-1244 (GLS/ATB), 2011 WL 3876526, at *8 (N.D.N.Y. Aug. 11, 2011), (*Rep't Rec.), adopted*, 2011 WL 3876419 (N.D.N.Y. Aug. 31, 2011). This is particularly true because the regulations provide that combined effects of all impairments must be considered, regardless of whether any impairment, if considered separately, would be of sufficient severity. 20 C.F.R. §§ 404.1523; *Dixon*, 54 F.3d at 1031.

## B.  Application

Plaintiff argues that the ALJ erred by finding his "knee impairment" not severe. (Pl.'s Br. at 8-11). The ALJ's determination that plaintiff's knee impairments were not severe was established by substantial evidence. Further, neither of plaintiff's knee impairments satisfied the twelve-month duration requirement.

### 1.  Duration

An individual's severe impairment must last "a continuous period of at least 12 months" in order to qualify for disability. 20 C. F. R. 404.1509. Unrelated severe impairments cannot be combined to "meet the 12-month duration test." Thus, if an individual had "a severe impairment" and "then develop[ed] another unrelated severe

impairment," but "neither one is expected to last for 12 months," that individual cannot be disabled under the Act, "even though the two impairments in combination last for 12 months." 20 C.F.R. § 404.1523(a).

Plaintiff alleges his two knee impairments were one single impairment, and thus satisfy the duration requirement. (Pl.'s Br. at 8-11). Plaintiff bears the burden at step two. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987). Plaintiff has cited nothing to establish that his left and right knee impairments were related. *See Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The Secretary is entitled to rely not only on what the record says, but also on what it does not say.").

Plaintiff first complained of left knee pain on February 9, 2014. (T. 365-77, 397). Plaintiff had left meniscus surgery on February 25, 2014. (T. 321-22). By April 2014, plaintiff was denying pain and stating that his recovery was "excellent." (T. 338-40). By May 7, 2014, Thomas Smallman, M.D., described plaintiff as a "happy customer" and stated that he had full range of motion of his left knee. (T. 395). Plaintiff claimed to be experiencing "no pain" and told the doctor that he was looking forward to starting his summer fitness routine, including running and biking. (T. 395). Further, plaintiff testified at his 2017 hearing that he was having "no problem[s]" with his left knee. (T. 67). Thus, plaintiff has not cited to any evidence to suggest his left knee impairment lasted longer than three months.

Almost a year and seven months later, on December 5, 2016, plaintiff first

complained of right knee pain to Dr. Smallman. (T. 499-500, 502). Plaintiff underwent right meniscus surgery on February 15, 2017, shortly before his administrative hearing. (T. 66, 509-11). On March 8, 2017, plaintiff reported that the surgery went "well," and he was walking with a brace. (T. 53). Thus, his right knee impairment had not lasted for one year at the time of the administrative hearing and the ALJ's decision.

However, plaintiff claims that he was experiencing right knee pain for one and a half years prior to December 2016. (Pl.'s Br. at 10). Plaintiff cites Dr. Smallman's December 2016 note, stating that plaintiff had right knee pain for "1.5 years," to show his knee impairment was severe and satisfied the twelve-month requirement.[4] (Pl.'s Br. at 10, T. 500). As discussed below, there is no evidence to support plaintiff's argument. In any event, if plaintiff's knee impairments were viewed as a single knee impairment, he could not meet the severity requirement. *See* 20 C. F. R. 404.1509.[5]

## 2. Severity

The important aspect of severity, is the functional limitation that the impairment imposes. *Hamilton v. Astrue*, No. 12-CV-6291, 2013 WL 5474210, at *10; *see House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 147 (N.D.N.Y. 2012) ("Although the medical record certainly documents treatment with respect to this impairment, no provider

---

[4] In his brief, plaintiff states that "[i]t is well supported by the medical record that Plaintiff has been suffering from knee problems for multiple years." (Pl.'s Br. at 10).

[5] This should not be confused with, 20 C.F.R. § 404.1523(c), which allows the consideration of the "combined effect of all" of an individual's "impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity."

identified any impact on plaintiff's ability to perform basic work activities."). Thus, the "mere existence of a diagnosis" is "insufficient to show that functional limitations would be imposed as a result of the impairments." *Payne v. Astrue*, No. 11-CV-322 (RFT), 2013 WL 550677, at * 5 (N.D.N.Y. Feb. 12, 2013). *See Prince v. Astrue*, 490 Fed. App'x. 399, 400 (2d Cir. 2013). If supported by substantial evidence, the ALJ has discretion in his or her findings to determine what qualifies as a severe impairment. *Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("factual determinations" by the ALJ are "conclusive unless they are unsupported by substantial evidence").

Plaintiff has not identified any medical records that would have compelled the ALJ to conclude that plaintiff's knee impairments impacted his ability to perform basic work activities. Plaintiff did not seek treatment for any knee impairment between May 2014 to December 2016. (T. 352, 357, 398-401, 435, 450, 480-82, 740, 748). *See Pulos v. Comm'r of Soc. Sec.*, No. 1:18:CV-248, 2018 WL 5801551, at *4 (W.D.N.Y. Nov. 5, 2018) (substantial evidence supported the ALJ's determination that a back and knee injury was non-severe where the plaintiff failed to present evidence of on-going treatment). During the year and a half period prior to December 2016, plaintiff denied "musculoskeletal problems" and did not mention having any knee pain on numerous occasions. (T. 492, 497, 529, 531, 534, 537). Further, plaintiff testified that he was physically active during the one-and-a-half-year period prior to December 2016, engaging in activities such as running on the treadmill and using the elliptical machine.

(T. 64-65). Accordingly, there is no indication in the record that plaintiff's knee pain affected his ability to perform basic work activities for twelve months, and the ALJ's determination that plaintiff's knee impairment was not severe was supported by substantial evidence.

### 3. Harmless Error

In addition, the ALJ did not deny plaintiff's claim at step two and considered the combined effects of all of plaintiff's impairments in his RFC analysis. (T. 33-35). The ALJ specifically considered plaintiff's knee impairments, including the pain that he alleged resulted from those impairments at step four of the sequential analysis. (T. 33-34). Thus, if the ALJ made any error at step two, it was harmless.

## VII. RFC/EVALUATION OF SYMPTOMS

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386, 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96-8p, 1996 WL 374184, at *2)).

In rendering an RFC determination, the ALJ must consider objective medical

facts, diagnoses and medical opinions based on such facts, as well as a plaintiff's

subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §

404.1545. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing

*LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)). An ALJ must specify the

functions plaintiff can perform and may not simply make conclusory statements

regarding a plaintiff's capacities. *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris v.

Heckler*, 728 F.2d 582, 588 (2d Cir. 1984); *LaPorta v. Bowen*, 737 F. Supp. 180, 183

(N.D.N.Y. 1990); *Sullivan v. Secretary of HHS*, 666 F. Supp. 456, 460 (W.D.N.Y.

1987)). RFC can only be established when there is substantial evidence of each

physical requirement listed in the regulations. *Id*. (citing *LaPorta v. Bowen*, 737 F.

Supp. at 183). The RFC assessment must also include a narrative discussion, describing

how the evidence supports the ALJ's conclusions, citing specific medical facts, and

non-medical evidence. *Trail v. Astrue*, No. 5:09-CV-1120, 2010 WL 3825629 at *6

(N.D.N.Y. Aug. 17, 2010) (citing Social Security Ruling ("SSR") 96-8p, 1996 WL

374184, at *7).

## 2.     Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must

take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*,

606 F.3d 46, 49 (2d Cir. 2010). The ALJ must " 'carefully consider' " all the evidence

presented by claimants regarding their symptoms, which fall into seven relevant factors

including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.' " *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016) ).

In 2016 the Commissioner eliminated the use of term "credibility" from the "sub-regulatory policy" because the regulations themselves do not use that term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[6] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged. . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider " 'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623 (2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).

---

[6] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear that the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The court will remain consistent with the terms as used by the Commissioner.

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superceded SSR 96-7p).

The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki v. Astrue*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id*. *See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018) ). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.' " *Cichocki v. Astrue*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

### B. Application

As stated above, the ALJ concluded that plaintiff retained the RFC to perform "less than the full range of medium work,"[7] with additional limitations, including the ability to walk, sit and stand each for up to six hours a day and the ability to engage in only "occasional fine manipulation" with his left hand. (T. 33). Plaintiff argues that the ALJ's physical RFC finding was improper because he relied on Dr. Ganesh's "vague" opinion. (Pl. Br. at 12-13). Plaintiff further argues that the ALJ failed to consider plaintiff's knee impairments, plaintiff's knee surgeries and recovery process; he relied too heavily on plaintiff's attempt to do a 180 pound curl; and that there was no evidence for the ALJ to find that plaintiff could do "occasional fine manipulation." (Pl.'s Br. at 10-14). This court concludes that the ALJ's assessment of plaintiff's physical impairments was supported by substantial evidence.[8]

In reaching the RFC determination, the ALJ gave "some weight" to the opinion of Kalyani Ganesh, M.D., who performed a consultative examination of plaintiff on February 10, 2015. (T. 35, 467-69). In Dr. Ganesh's Medical Source Statement of Ability to do Work-Related Activities (Physical) ("MSS"), she opined plaintiff had "no limitations sitting or standing and he ha[d] approximately moderate limitations walking

---

[7] Under 20 C.F.R. §§ 404.1567(c) and 416.967(c), medium work is defined as follows: "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work."

[8] Plaintiff has not asserted that the ALJ erred in his finding regarding the existence and severity of plaintiff's mental impairments, nor has the plaintiff argued that the ALJ erred in plaintiff's RFC finding regarding plaintiff's mental impairments. Thus, plaintiff's mental impairments and RFC finding derived therefrom will not be addressed.

and climbing." (T. 469).

Plaintiff argues that the ALJ improperly relied on Dr. Ganesh's consulting

opinion because the language, "approximately moderate," was too "vague." (Pl.'s Br. at

12-13). While language such as "mild" and "moderate" may be vague, "recent cases

have held that when there is other medical evidence, in addition to an RFC evaluation

using terms such as 'mild' and 'moderate,' such terms may properly be relied on the

RFC analysis." *Gary V. v. Comm'r of Soc. Sec.*, No. 3:18-CV-125 (ATB), 2019 WL

356545, at *5 (N.D.N.Y. Jan. 29, 2019); *See also Tankisi v. Comm'r of Soc. Sec.*, 521

F. App'x 29, 34 (2d Cir. 2013).[9]

Upon examination, Dr. Ganesh noted plaintiff appeared to be in no acute distress,

---

[9] Plaintiff urges this court to base its decision on the decision in *Williams*. (Pl.'s Br. at 12). *Williams v. Berryhill*, No. 16-CV-5606, 2018 WL 4636962, at *20 (E.D.N.Y. Sept. 27, 2018). In *Williams* the court determined that the "use of the terms 'mild,' 'moderate,' and 'marked' to describe the plaintiff's restrictions in 'sitting, standing, and walking' are the kind of vague terms which some courts have found insufficient to support a determination that a plaintiff is not disabled under the Act." *Williams*, 16-CV-5606, 2018 WL 4636962, at *20 (quoting *Brady v. Colvin*, No. 14-CV-5773, 2016 WL 1448644, at *8 (E.D.N.Y. Apr. 12, 2016). According to the court in *Williams*, the ALJ's decision was speculative as it disregarded one doctor's opinion (out of two doctors' opinions) stating that the plaintiff was limited in the ability to sit for prolonged periods of time, while giving "great weight" to the opinion of a doctor who did not examine the plaintiff. *Id.* Thus, the court determined that the decision was "speculative" and "not supported by substantial evidence." *Id* (citing *Richardson v. Astrue*, No. 10-CV-9356 (DAB) (AJP), 2011 WL 2671557, at *12 (S.D.N.Y. July 8, 2011) ).
    Although, Dr. Ganesh assessed that plaintiff had "approximately moderate limitations walking and climbing," and this language is similar to the questioned language used in *Williams*, the similarities end there. (T. 469). The ALJ's finding in *Williams* was largely based on the opinion of a non-examining medical expert. Unlike *Williams*, Dr. Ganesh was not a non-examining medical expert, but rather a consultative physician who conducted a physical examination of plaintiff. Additionally, the decision in *Williams* emphasized the fact that the ALJ disregarded the medical opinion of an examining physician. Unlike *Williams*, plaintiff has not cited to any medical record that provides a conflicting opinion regarding plaintiff's ability to walk or sit. Thus, *Williams* is readily distinguishable.

had a normal stance, required no assistive devices and did not require help changing or getting on and off the examination table. (T. 468). Dr. Ganesh further indicated that plaintiff had a slight limp that favored the left, and he could not walk heel-to-toe nor squat. (*Id*.) Plaintiff exhibited full cervical flexion, extension, lateral flexion bilaterally and rotary movement bilaterally. (T. 469). Plaintiff did not have scoliosis, kyphosis, or abnormality in the thoracic spine. (*Id*.) Lumbar flexion was 75 degrees, extension 15 degrees and lateral flexion 10 degrees bilaterally, with full rotary movement of shoulders, elbows, forearms, hips, knees and ankles bilaterally. (*Id*.) Straight Leg Raise Test was negative bilaterally. (*Id*.) Plaintiff had no evident subluxation, contractures, ankylosis or thickening. Plaintiff presented stable and non-tender joints, had no redness, had no swelling or effusion and only had slight warmth of the left knee. (*Id*.) Plaintiff exhibited hand and finger dexterity and full grip strength bilaterally. (*Id*.) Based on her examination, Dr. Ganesh opined that plaintiff had a "stable, but guarded" prognosis. (*Id*.)

During Dr. Ganesh's examination, plaintiff reported that he cleaned his home and did laundry once a week. (T. 467). He reported that he showered, bathed and dressed himself daily. (*Id*.) He listened to the radio and went to church. (*Id*.). This is consistent with plaintiff's hearing testimony regarding his typical daily activities.

The ALJ's also considered plaintiff's testimony as a basis for his RFC determination. Plaintiff testified that he frequently cooks, cleans, does laundry, goes to

church, and volunteers at a food pantry. (T. 34). Plaintiff further testified that he engaged in heavy exercise, including, but not limited to, jogging and on one occasion attempted to curl a 180-pound weight. (T. 63-65).

Plaintiff suggests that the ALJ relied too heavily on plaintiff's attempt to curl a 180 pound weight. (Pl.'s Br. at 13). However, the ALJ did not use plaintiff's "curl" as an indication he could do this particular exercise fully or frequently, but rather as indicative of his ability to exercise "aggressively." (T. 43); *See Monroe v. Comm'r of Soc. Sec.*, 676 F. App'x 5, 8 (2d Cir. 2017) (ALJ "relied on plaintiff's extraneous activities including snowmobiling, horseback riding and four-wheeling."). When the ALJ considered these activities he noted that, combined, they "require many of the same functions" that plaintiff alleged he is unable to perform in a work setting. (*Id.*). The ALJ is entitled to consider a plaintiff's stated daily activities in making the RFC determination. *Monroe*, 676 F. App'x at 8.

Plaintiff further argues that the ALJ failed to consider plaintiff's knee impairments, surgeries and recovery. (Pl.'s Br. at 10-14). Plaintiff has not addressed what information from the record is missing from the ALJ's discussion. The ALJ's decision to not discuss the right and left knee impairments, surgeries, and recovery in exhaustive detail is appropriate because, as previously discussed, plaintiff's knee impairments do not satisfy the duration requirement, and there appear to be no additional limitations arising from these impairments.

However, in reaching the physical RFC determination, the ALJ did recognize that plaintiff had two arthroscopic surgeries. (T. 31, 34). In addressing plaintiff's left knee impairment, the ALJ noted that the plaintiff achieved "excellent results," following his surgery. (T. 34). The ALJ also noted that plaintiff reported a "full range of motion and no pain" a few months following this procedure. (T. 34). In addressing plaintiff's right knee, the ALJ noted his "recent" surgery and that he was "doing well." (T. 34). Finally, in the ALJ's RFC finding, he made it clear that he "considered all symptoms and the extent to which these symptoms could reasonably be accepted as consistent with the objective medical evidence and other evidence." (T. 33).

Plaintiff also argues that Dr. Ganesh's consulting opinion cannot support the ALJ's RFC determination as it was the only physical opinion discussed, and the opinion was only given "some weight." (Pl.'s Br. at 13). The ALJ entitled to determine an RFC based on "all of the relevant medical" evidence and "other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The "report of a consultative physician may constitute" substantial evidence. *Mongeur v. Heckler*, 722 F.2d 1033, 1039 (2d Cir. 1983). The absence of additional supporting medical opinions does not automatically establish that an ALJ's decision is unsupported by substantial evidence. *Zurek v. Colvin*, No. 6:15-CV-0453 (GTS), 2016 WL 4466791, at *7 (N.D.N.Y. Aug. 24, 2016) ("medical evidence shows relatively little physical impairment, an ALJ permissibly can render a common sense judgment about functional capacity even without a physician's

assessment."). In fact, a "medical source statement or formal medical opinion is not necessarily required" to support an ALJ's RFC determination. *Monroe*, 676 F. App'x at 8.

The ALJ afforded Dr. Ganesh's opinion "some weight" as "it was rendered after a thorough examination of the claimant by a physician with extensive program and professional expertise." (T. 35) The ALJ noted that greater weight could not be given, however, as the examination occurred "shortly after" the plaintiff's "knee surgery,"[10] which has not resulted "in an ongoing limitation that lasted one year or more." (*Id*.). Nonetheless, the ALJ's was entitled to use Dr. Ganesh's consultative opinion. *See Mongeur v. Heckler*, 722 F.2d at 1039. Based upon Dr. Ganesh's evaluation of the relevant medical evidence, and plaintiff's testimony, supporting Dr. Ganesh's opinion regarding plaintiff lack of limitations in standing and walking and "approximately moderate" limitations walking and climbing, the ALJ's determination that plaintiff could perform less than the full range of medium work was supported by substantial evidence. *See Taylor v. Astrue*, 32 F. Supp. 3d 253, 271 (N.D.N.Y. 2012) (physicians' assessment, including his opinion that plaintiff had a moderate limitation in walking,

---

[10] The court notes that plaintiff's left knee surgery occurred on February 25, 2014, approximately one year prior to Dr. Ganesh's consultative examination which occurred on February 10, 2015. (T. 321-22, 467-69). Although the ALJ erred in his finding that Dr. Ganesh's examination occurred "shortly" after plaintiff's left knee surgery, this was harmless error as substantial evidence supported the ALJ's RFC determination. (T. 35); *see McCann v. Comm'r of Soc. Sec.*, No. 5:13-CV-801 GLS, 2014 WL 4199230, at *3 (N.D.N.Y. Aug. 21, 2014) (an ALJ's misstatement was, at most, harmless error where substantial evidence in the record supported the ALJ's conclusion).

provided support for the ALJ's RFC assessment that plaintiff could stand, walk and sit for about six hours in an eight-hour workday); *see also Stacey v. Comm'r of Soc. Sec.*, No. 09-CV-638 (DNH/VEB) 2011 WL 2357665, *6 (N.D.N.Y. 2011) (physician's assessment of moderate limitations in plaintiff's ability to lift, carry, walk, stand and bend, was consistent with the ALJ's conclusion that plaintiff could walk and stand for up to six hours in an eight-hour workday), (*Rep't Rec.*)*, adopted*, 2011 WL 2293328 (N.D.N.Y. June 8, 2011).

Finally, plaintiff argues that the ALJ's RFC determination that he could engage in "occasional" fine manipulation with his left hand was not supported by substantial evidence. (Pl.'s Br. at 13).[11] The ALJ cited plaintiff's own testimony that he engaged in cooking, cleaning and driving. (T. 468). The ALJ further cited a nerve conduction survey which found only "moderate abnormalities" in plaintiff's left wrist. (T. 34, 468, 483). The ALJ cited normal findings by Dr. Ganesh with respect to the upper extremities, showing full strength with intact hand and finger dexterity and full grip strength bilaterally. (T. 468).[12]  Thus, the ALJ's decision that plaintiff could engage in

---

[11] Plaintiff appears to argue that Dr. Ganesh's limitations for plaintiff's "severe carpal tunnel are made up whole cloth." (Pl.'s Br. at 13). According to plaintiff, Dr. Ganesh did not provide any notes or explanation for his evaluation of plaintiff's "occasional fine manipulation." (*Id.*).

[12] Although not cited by the ALJ, the medical record also provides other evidence supporting the ALJ's finding that plaintiff could perform occasional fine manipulation. Although plaintiff complained of "pulsating" in his left arm and fingers on October 18, 2016, no abnormal findings were observed by Dr. Helgeson. (T. 698). By January 16, 2017, Dr. Helgeson found that plaintiff had full strength his in bilateral deltoids, biceps, triceps, wrist extensor, wrist flexor, hand intrinsics and finger flexors, except for eight percent strength in his left triceps, notwithstanding plaintiff's claims of left arm pain and numbness on December 3, 2018. (T. 497, 506).

occasional fine manipulation was supported by substantial evidence.

       **WHEREFORE**, based on the findings above, it is

       **ORDERED,** that the decision of the Commissioner is **AFFIRMED** and

plaintiff's complaint is **DISMISSED**; and it is

       **ORDERED** that the Clerk enter Judgment for the **DEFENDANT**.

Dated: July 9, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge